NOT FOR PUBLICATION                    [ 9, 11, 14, 17, 21, 23, 28, 43 ]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
                                          :
DAVID L. TILBURY AND ANN E.               :        Civil Action No. 05-2033 (FLW)
TILBURY,                                  :
            Plaintiffs,                   :
                                          :              **AMENDED OPINION**
        v.                                :
                                          :
AAMES HOME LOAN, ET AL,                   :
            Defendants.                   :
———————————————————————:

APPEARANCES:

For Plaintiffs:

DAVID L. TILBURY, PRO SE
ANN E. TILBURY, PRO SE
116 Galway Ct.
Magnolia, DE 19962

For Defendants First American Title Insurance Company, Gary L. Kermott and Nancy Newman-
Brown:
MARK A. RINALDI
MARK A. RINALDI, L.L.C.
750 ROUTE 73 SOUTH
SUITE 210
MARLTON, NJ 08053

For Defendant George M. Conway, III:
GEORGE M CONWAY, III, PRO SE
1010 Red Oak Drive
Cherry Hill, NJ 08003
        and
Howard E. Drucks
COOPER LEVENSON
1125 Atlantic Ave.
Third Floor
Atlantic City, NJ 08401

For Defendant Stephen McNally:
JENNIFER GIFFORD
HARVEY PENNINGTON PC
CHERRY TREE CORPORATE CENTER
535 ROUTE 38 EAST, SUITE 360
CHERRY HILL, NJ 08002

For Defendants Jonathan Preziosi and Melissa Chuderewicz:
STEPHANIE L. MERK
PEPPER HAMILTON LLP
300 ALEXANDER PARK
PRINCETON, NJ 08543

For Defendants Cenlar F.S.B., Michael Young, Kimberly Ann Glosso Hagen, Kelly Lutz, Nancy
Irwin, Terry Kane, Kristin Shellenberger and Rosemary Leonardis:
MARK R. LYBECK
LEVY, LYBECK, BERTELE & JAWORSKI, PC
385 MORRIS AVENUE
PO BOX 478
SPRINGFIELD, NJ 07081

For Defendants Aames Home Loan and Harold G. Belkowitz:
Timothy O'Brien
Parker McCay P.A.
Three Greentree Centre
7001 Lincoln Drive West
P.O. Box 974
Marlton, NJ 08053-0974

For Defendant Shari Seffer:
GREGG PHILIP TABAKIN
FEIN, SUCH, KAHN & SHEPARD
7 CENTURY DRIVE
SUITE 201
PARSIPPANY, NJ 07054

**WOLFSON, United States District Judge**

David Tilbury and Ann Tilbury, Plaintiffs pro se,  ("Plaintiffs" or "The Tilburys") have

sued twenty eight different Defendants in this matter.   Defendants First American Title

Insurance Company, Gary L. Kermott, Nancy Newman-Brown, George M. Conway, III, Stephen McNally, Jonathan Preziosi, Melissa Chuderewicz, Shari Seffer, Cenlar F.S.B., Michael Young, Kimberly Ann Glosso Hagen, Kelly Lutz, Nancy Irwin, Terry Kane, Kristin Shellenberger, Rosemary Leonardis, Aames Home Loan and Harold G. Belkowitz have filed motions to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) and to have the Court enjoin Plaintiffs from access to the federal court system in this District without prior leave of Court. Two issues are before the Court: first, whether Plaintiffs' complaint can survive the motions to dismiss, and second, whether Plaintiffs should be enjoined from filing complaints in this District without prior leave of Court.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1367.  For the reasons stated below, Defendants' motions to dismiss are granted, and the Court is exercising its inherent power to enjoin David and Ann Tilbury from further pro se filings against these defendants or any employee, agent, or attorney thereof, unless certain conditions are met.

## I.  BACKGROUND[1]

Since 1989, the Tilburys have filed no fewer than seven bankruptcy[2] petitions, three appeals or lawsuits in the United States District Court, two appeals to the United States Court of Appeals for the Third Circuit, and numerous state court actions arising in connection with certain

---

[1]The facts and filings descried in this section are found in the Opinions, Orders, Hearing Transcripts and Briefs submitted to the Court for the purposes of these motions, and in the Court's own Opinion dated April 5, 2005.

[2]They are: Case No. 87-06721 (filed 11/04/87); Case No. 88-05085 (filed 08/04/88)l Case No. 91-11406 (filed 03/21/91); Case No. 93-10207 (filed 01/14/93); Case No. 90-14945-GMB (filed 11/03/93); Case No. 00-15560-GMB (filed 07/06/00); and Case No. 04-43087-GMB (filed 10/15/04). The Tilburys claim that at least one petition was filed without their knowledge.

of their loans and mortgages.  The Defendants can be broken down into six categories: 1) Aames Home Loan ("Aames") defendants, 2) First American Title Insurance Company ("FATICO") defendants, 3) Cenlar F.S.B. ("Cenlar") defendants, 4) Plaintiffs' own former attorneys, 5) judicial defendants, who have all since been dismissed, and 6) the "Operator and/or controller of Court Recording device."  Pls.' Compl. at 1-2.

Plaintiffs filed their initial Chapter 13 petition in 1988.  However, due to complications caused by the disbarment of their counsel, Plaintiffs were allowed to re-file their Chapter 13 petition in 1993, and on November 3, 1993, The Tilburys re-filed their Chapter 13 Bankruptcy case; the case was assigned docket number 93-14945.  At the time of the Bankruptcy filing, Trans World Mortgage held a mortgage on Plaintiffs' property located at 405 Grant Avenue, Edgewater, New Jersey.  Trans World Mortgage later assigned the mortgage to Cenlar. Ultimately, the mortgage was assigned by Commonwealth Mortgage to FATICO in 2001.

In 1996, Plaintiffs' Bankruptcy counsel drafted a consent order establishing the mortgage loan amount owed to defendant Cenlar, but inadvertently reduced the lender's claim of $90,900 by an additional $26,696. In Re Tilbury, No. 93-14945, Hearing Transcript (Sept. 18, 1998) 8:7-24.  On May 16, 1996, the Bankruptcy Court issued an Order reducing the amount of the mortgage claim to $65,169. In Re Tilbury, No. 93-14945, Order (May 16, 1996).  As a result of the mistake, this Order reflected the incorrect amount owed to Cenlar. Aames' Ex. 1, 3.

In late 1997, Plaintiffs contracted with Aames for a $90,900 loan and mortgage. Tilbury v. Aames, No. L-000667-02, Hearing Transcript (Sept. 21, 2004) at 104:12-106:4.  Aames provided the requested loan to Plaintiffs and received a mortgage. Id. Titleserv, FATICO's agent,

was responsible for determining the accuracy of payoffs and disbursing the loan proceeds. Id. at 104:23-107:22. Titleserv issued a $26,366.65 check to Plaintiffs that it apparently thought satisfied the outstanding mortgage balance. Id. However, the mortgage balance was incorrect as a result of the May 16, 1996 Order of the Bankruptcy Court. Id. Moreover, this check should have been issued to Cenlar, and not to Plaintiffs, who kept the money. Id.

On February 16, 1998, Cenlar filed a motion to modify the May 16, 1996 Order and to vacate the Automatic stay with respect to the real property. In Re Tilbury, No. 93-14945, Seffer Cert. (Feb. 16, 1998). Oral argument was held before the Hon. Gloria M. Burns, U.S.B.J., on September 18, 1998, at which the Plaintiffs appeared pro se. Defendant Shari Seffer, Esq. ("Seffer"), counsel for Commonwealth Mortgage, predecessor to FATICO, argued that the May 16, 1996 Order, which was submitted by Appellant's counsel, contained a clerical error which resulted in the amount of the claim being misrepresented. In Re Tilbury, No. 93-14945, Seffer Cert. (Feb. 16, 1998). Judge Burns ruled that the amount of the claim should have been stated as $96,065.62 and that the Plaintiffs were to be credited for $69,369, thereby leaving an outstanding principal balance of $26,369.69 to be paid by the Appellant to satisfy the claim.[3] In Re Tilbury, No. 93-14945, Hearing Transcript (Sept. 18, 1998) 13:3-13:20. Subsequent to the hearing, Judge Burns issued an Order on November 23, 1998, that established a total amount due to the creditor of $37,909.76. In Re Tilbury, No. 93-14945, Order (Nov. 23, 1998). This amount included $10,528.63 for taxes and insurance advanced by the creditor and $252.86 of interest. In Re

---

[3]$96,065.62 represented the total arrearage due to the creditor based in part on creditor's proof of claim filed in March, 1994. $26,369.69 is approximately the same amount that Aames paid to Plaintiffs in the prior year.

Tilbury, No. 93-14945, Order (Nov. 23, 1998). Plaintiffs never filed an appeal or motion for

reconsideration of that Order and FATICO proceeded with foreclosure of the property.

In June 2001, Plaintiffs, acting pro se filed a motion to dismiss a foreclosure action filed

in 1987 in the Superior Court of New Jersey Chancery Division by Cenlar, FATICO's

predecessor.   Tilbury v. Balboa, Case No. 04-cv-4720 (FLW) at 4 (D.N.J Apr. 5, 2005).  At least

three separate hearings on the matter were scheduled before Judge Gottlieb, of the Superior Court

of New Jersey Chancery Division, on October 10, 2001, December 21, 2001 and January 18,

2002, but Plaintiffs still disputed the amount that they owed to the creditor.  Id.  A foreclosure

hearing before the Honorable Ronald E. Bookbinder, J.S.C., was held on February 25, 2002, to

allow the Plaintiffs the opportunity to dispute the foreclosure amount. Id.  Although Plaintiffs

were represented by counsel at this proceeding, Plaintiffs themselves did not attend or participate

in the hearing because of an apparent disagreement that they had with their attorney. Id.  At this

hearing, both parties agreed that the amount established in Judge Burns's November 1998 order

would be the starting point for discussion of the amount due, subject to any proofs that the

Plaintiffs could provide at the hearing. Id. On April 11, 2002, Judge Bookbinder issued an Order

embodying his finding at the hearing that, as of February 25, 2002, the total outstanding arrears

due on the mortgage was $46,991.84.  First American Title Ins. Co v. Tilbury, et al., No. F-5216-

87, Order (Apr. 11, 2002).  The Superior Court entered a foreclosure judgment against Plaintiffs

on or about April 11, 2002. Id.

Plaintiffs also filed a motion to transfer the concluded foreclosure matter to the Law

Division of Burlington County, which Judge Bookbinder denied.  Tilbury v. Balboa, Case No.

04-cv-4720 (FLW) at 4 (D.N.J Apr. 5, 2005). On April 16, 2002, Plaintiffs filed a motion for

reconsideration of their application to transfer the foreclosure. Id. at 5. Judge Bookbinder denied

the motion on May 17, 2002. Id. Plaintiffs also appealed the April 11, 2002 Order; the

Appellate Division affirmed Judge Bookbinder on May 30, 2003. Tilbury v. First Jersey

National Bank West, No. A-5069-01T1, Opinion (May 30, 2003).

On May 7, 2003, Judge Bookbinder entered an Order correcting a clerical error on the

April 11, 2002 Order. First American Title Ins. Co. v. Tilbury, No. F-5216-87, Order (May 7,

2003). After FATICO filed an application for final judgment, Plaintiffs filed opposition to the

application and also filed a motion to vacate the May 7, 2003 Order based upon newly

discovered evidence and fraud. Tilbury v. Balboa, Case No. 04-cv-4720 (FLW) at 5 (D.N.J Apr.

5, 2005). Judge Bookbinder tentatively denied Plaintiffs' opposition to the application and their

motion to vacate on May 27, 2004 and on July 17, 2004. Id.

On February 25, 2002, Plaintiffs filed another case, bearing docket number L-000667-02,

against Aames, Cenlar, FATICO, Titleserv, and Thomas Orr, Esq. ("Orr"), the Tilburys' former

bankruptcy attorney, in the Superior Court of New Jersey, Law Division, Burlington County. The

suit alleged lending violations, fraud/misrepresentation, negligence, conspiracy, breach of

contract, deceptive trade practice, and other causes of action. Tilbury v. Aames, et al., Burlington

County, Law Division, Case No. L-000667-02, Am. Compl. (June 17, 2002). During discovery,

Plaintiffs alleged that the underlying facts also supported additional claims that all of the

defendants engaged in improper conduct, including that various entities' conduct arising from the

same transaction and occurrences at issue in the present case amounted to a violation of the

Racketeer Influenced and Corrupt Organization Act ("RICO"). Tilbury v. Aames, et al.,

Burlington County, Law Division, Case No. L-000667-02, Mot. To Enlarge and Amend

7

Plaintiffs' Civil Action (July 21, 2004).  The Court denied leave to amend because it was, among other reasons, not timely filed. <u>Tilbury v. Aames, et al.</u>, Burlington County, Law Division, Case No. L-000667-02, Order (Aug. 27, 2004).

On September 21, 2004, after a lengthy oral argument, the Honorable Craig Wellerson, J.S.C.,[4] granted the motions for summary judgment in their entireties in Case No. L-000667-02. Several months later, on February 4, 2005, Plaintiffs initiated an action with this Court against the same parties when they attempted to remove the dismissed state court action to federal court. <u>Tilbury v. Aames, et al.</u>, Case No. 05-721 (FLW). On February 10, 2005, I remanded Plaintiffs' improvidently removed action. Plaintiffs appealed that ruling, and the Third Circuit affirmed my decision on July 13, 2005.

On July 7, 2004 the Tilburys moved the United States Bankruptcy Court to rescind the November 23, 1998 Order. That request was denied. The Tilburys filed an appeal, docketed as Case No. 04-4720.  By way of an Opinion dated April 5, 2005, this Court affirmed the Bankruptcy Court.

Plaintiffs filed the instant complaint on April 18, 2005 against FATICO, Gary L. Kermott, Nancy Newman-Brown, George M. Conway, III, Stephen McNally, Jonathan Preziosi, Melissa Chuderewicz, Shari Seffer, Cenlar, Michael Young, Kimberly Ann Glosso Hagen, Kelly Lutz, Nancy Irwin, Terry Kane, Kristin Shellenberger, Rosemary Leonardis, Aames, A. Jay

---

[4]Judge Wellerson was a defendant in this case until Plaintiffs voluntarily dismissed their claim against him.

Meyerson, Harold G. Belkowitz, Bruce Sattin, Andrew Finberg,[5] Philip S. Carchman, J.A.D., Ronald E. Bookbinder, J.S.C., Craig L. Wellerson, J.S.C., Jude Del Preore, T.C.A., the Administrative Office of the Courts, State of New Jersey, and John/Jane Doe the "Operator and/or controller of Court Recording device."  In the complaint, Plaintiffs allege, inter alia, that they are bringing this action pursuant to the Truth in Lending Act, Fair Housing Act, RESPA, RICO (federal and New Jersey), False Statements Act, United States Constitution, New Jersey Consumer Fraud Act, and that certain defendants conspired to defraud HUD, made false statements to HUD, committed fraud, negligence and breach of contract.

Specifically, they allege that: 1) Defendant Seffer, Cenlar's attorney, "was negligent for failing to file an amended creditor's Claim on behalf of her client," Compl. ¶ 40; 2) Aames engaged in "Predatory Lending Practice, ... violated TILA regulations, violated RESPA, Breached Plaintiffs [sic] mortgage contract by not ever having first position, was negligent for not clearing a mortgage title properly, committed fraud for charging Plaintiff for a title search and intentionally and with malice conspired with all other defendants to defraud Plaintiffs out of Plaintiffs [sic] home property that is estimated to be worth $291,000.00, id. ¶ 47; 3) FATICO "intentionally and with malice conspired with all other defendants to defraud Plaintiffs out of Plaintiffs [sic] home property that is estimated to be worth $291,000.00, intentionally and with malice continued mortgage servicing fraud after being assigned Plaintiffs [sic] first position mortgage on July 10, 2001, ... breached Plaintiffs [sic] first position mortgage contract dated

---

[5]Bruce Sattin and Andrew Finberg, Plaintiffs' former attorneys, have never been served and are not participating in the case.  See p. 21, infra.

January 11, 1986, violated RESPA by not noticing Plaintiffs [sic] assignment of mortgage on

June 10, 2001, committed common fraud, equity fraud and intentionally hid important discovery

documents that prove assignor and assignee committed mortgage servicing fraud to obtain a

foreclosure judgment dated April 11, 2002, id. ¶ 48; 4) Cenlar, its CEO, Vice President,

Supervisors, employees and counsel intentionally and with malice conspired with all other

defendants to defraud Plaintiffs out of Plaintiffs [sic] home property that is estimated to be worth

$291,000.00, intentionally and with malice continued mortgage servicing fraud, tampered with a

mortgage banking computer to inflate Plaintiffs [sic] mortgage pay off statement, obtained a

Court Order from the Bankruptcy Court by Fraud, committed perjury, ruined Plaintiffs [sic]

credit, failed to abide by a Federal Bankruptcy Order, violated discovery procedures, added late

charges after initial filing of a foreclosure complaint on [sic] September, 1987, violated Ethic

[sic] rules, breached Plaintiffs [sic] first position mortgage contract dated January 11, 1986,

violated RESPA by not noticing Plaintiffs [sic] assignment of mortgage on June 10, 2001,

committed common fraud, equity fraud and intentionally hid important discovery documents

from Plaintiffs until March 29, 2004, id. ¶ 49; 5) "All named Defendants violated Plaintiffs [sic]

Due Process and equal protection under the U.S. Constitution's 14th Amendment," id. ¶ 50; 6)

"All named Defendants acted with bias and prejudice towards Plaintiffs," id. ¶ 51; All named

Defendants "violated," "contributed to the violation of," and "conspired with other Defendants

and/or had knowledge that other Defendants were violating" RICO, id. ¶ 52-54; 7) Defendants

Sattin and Finberg, Plaintiffs' former attorneys "acted with negligence, malice, and conspired

with all other defendants to defraud Plaintiffs out of their home property by not requesting a

break down of the amount that other Defendants were stating was owed by Plaintiffs, by not

requesting discovery from all other defendants when each was acting as counsel for Plaintiffs, and by not fully defending Plaintiffs to the best of their legal expertise" and "conspired against Plaintiffs, their own clients," id. ¶ 58, 73; 8) Defendants Lutz, Irwin, Kane, Shellenberger, Leonardis, Hagen, Seffer, Ackerman, Preziosi and Chuderewicz committed fraud, id. ¶ 62; 9) Defendants Cenlar, Young, Lutz, Irwin, Kane, Shellenberger, Leonardis, Hagen, Seffer, Ackerman, Preziosi and Chuderewicz were engaged in a pattern of racketeering activity and "participated in the mortgage servicing fraud scheme knowing that Plaintiffs first position mortgage loan payoff was obtained by fraudulent means," id. ¶ 61, 63, 69; 10) Defendants FATICO, Kermott, Newman-Brown, Conway, McNally, Aames, Meyerson, Belkowitz, Sattin, Finberg and Judges Wellerson and Bookbinder committed "mortgage servicing fraud because they had knowledge that Plaintiffs first position mortgage loan payoff was generated through a scheme to defraud Plaintiffs out of their home property," id. ¶ 67; 11) Defendants FATICO, Kermott, Newman-Brown, Conway, McNally, Aames, Meyerson, Belkowitz, Sattin, Finberg and Judges Wellerson and Bookbinder "directed, and/or approved, aided, abetted, counseled, and/or induced the commission of said acts by other persons ... in violation of [RICO]", 18 U.S.C. § 241, Conspiracy Against Civil Rights, and 18 U.S.C. § 242, Deprivation of Civil Rights Under Color of Law, id. ¶ 70; 12) Defendants Young, Lutz, Irwin, Kane, Shellenberger, Leonardis, Hagen, Seffer, Ackerman, Preziosi and Chuderewicz "conspired and agreed to defraud numerous low-income ... homeowners who are either behind in their mortgage payments and heading for Foreclosure or homeowners who are in Bankruptcy," id. ¶ 71; 13) Defendants Preziosi and Chuderewicz are guilty of "hiding discovery documents, falsifying legal standings, misrepresenting facts and issues to the Courts on any homeowner that challenged the mortgage

servicing fraud in State Court, id.; 14) Defendant Judge Wellerson "became part of the 'conspiracy by failing to address any of Plaintiffs [sic] genuine claims and by failing to use and legal standings or New Jersey Laws in accordance with State Court Rules of Procedure when deciding on summary motions on September 21, 2004," id. ¶ 42; 15) Defendant Judge Wellerson "violated Plaintiff's [sic] civil rights and due process of law by denying Plaintiffs to speak during court proceedings, by ridiculing Plaintiffs and refusing Plaintiffs to Amend Plaintiff's State Civil Action under Docket No. L-000667-02, id. ¶ 43; 16) Defendant Judge Wellerson  "discriminated against Plaintiff's [sic] Civil Rights" by "ruling that Plaintiffs are not uneducated people and could not have been defrauded," id. ¶ 44; 17) Defendant Judge Wellerson violated Plaintiffs' "First Amendment, Fifth Amendment, Seventh Amendment, Ninth Amendment, and Fourteenth Amendment Rights ... by not allowing Plaintiffs to speak during court hearings, by not following the New Jules Rules of the Court ... by intimidating Plaintiffs, by holding Pro Se Plaintiffs to the same standard as licensed attorneys, by allowing known false Testimony, and by conspiring with Plaintiffs [sic] adversaries and 'big insurance and mortgage corporations' to defraud Plaintiffs out of their home estimated at approximately $291,000.00, id. ¶ 55; 18) Defendant Judge Wellerson and Defendant Doe, the "Operator and/or controller of Court Recording device," "violated Plaintiff's [sic] Due Process rights and equal protection under law rights by tampering with a Court Hearing recording device.  Transcripts show several stops and starts during the hearing on September 21, 2004.  Only once did Defendant, Judge Wellerson leave the bench and there was [sic] no side bars.  The transcript also has several important words, sentences and/or exchanges omitted, as well as transformation of words spoken during the hearing on September 21, 2004, id. ¶ 56; 19) Defendants Judge Wellerson, Carchman, Del Preore, and Administrative

Office of the Courts, State of New Jersey "violated Plaintiffs and all others [sic] U.S. Citizens with matters before the New Jersey Civil Courts, the right to due process and equal protection under the Fourteenth Amendment by not having any Administrative Court procedure, Rule, Standard or directive that safeguards the court hearing recording devices or tapes.  There is no set chain of command for the custody of court the tapes, id. ¶ 57; 20) Defendant Judge Bookbinder "violated Plaintiffs [sic] First Amendment, Fifth Amendment, Seventh Amendment, Ninth Amendment, and Fourteenth  Amendment Rights by holding a foreclosure hearing on February 24, 2002," id. ¶ 60; and 21) Defendants Judges Wellerson and Bookbinder "intentionally failed to administer New Jersey's Rules of the Court, Statutes and Legal Standings when deciding Motions," id. ¶ 67.

Concurrent with their complaint, Plaintiffs filed a petition for emergent relief seeking an injunction to prevent the Sheriff's foreclosure sale of their property located at 405 Grant Avenue, Edgewater, New Jersey that was scheduled for April 21, 2005.  This Court denied Plaintiffs' petition by Order, stating that "Plaintiffs have not shown good cause for this application which is based upon prior court rulings adverse to them." Tilbury v. First American Title Co., et al., Civil Action No. 05-2033 (FLW), Order (Apr. 18, 2005).  On April 20, 2005, the Third Circuit denied Plaintiffs' motion for emergent relief, and on October 24, 2005, the Third Circuit dismissed Plaintiffs' appeal of my Order of April 18, 2005 because the sale of the property, which occurred on April 21, 2005 as scheduled, had mooted the appeal.

 FATICO, Gary L. Kermott, Nancy Newman-Brown filed their motion to dismiss on May 18, 2005.  They also sought to have Plaintiffs barred from filing complaints in this District without prior leave of Court.  George M. Conway, III filed his motion to dismiss on May 27,

13

2005; he is also seeking the same bar sought by FATICO, Gary L. Kermott, Nancy Newman-Brown. Steven McNally filed his motion to dismiss on June 10, 2005; he is also seeking the filing bar. Jonathan Preziosi and Melissa Chuderewicz filed their motion to dismiss on June 16, 2005; they are also seeking the filing bar. Philip S. Carchman, J.A.D., Ronald E. Bookbinder, J.S.C., Craig L. Wellerson, J.S.C., Jude Del Preore, T.C.A. and the Administrative Office of the Courts, State of New Jersey filed their motion to dismiss on June 20, 2005. On June 21, 2005, Cenlar, Michael Young, Kimberly Ann Glosso Hagen, Kelly Lutz, Nancy Irwin, Terry Kane, Kristin Shellenberger, Rosemary Leonardis filed their motion to dismiss; they are also seeking the filing bar. On June 24, 2005, Aames and Harold G. Belkowitz filed their motion to dismiss; they are also seeking the filing bar. On June 29, 2005, Philip S. Carchman, J.A.D., Ronald E. Bookbinder, J.S.C., Craig L. Wellerson, J.S.C., Jude Del Preore, T.C.A. and the Administrative Office of the Courts, State of New Jersey sent a letter to the Court indicating that they too were seeking the filing bar against Plaintiffs. On June 30, 2005, Plaintiffs sent a letter to the Court indicating that they wished to voluntarily dismiss their claims against Philip S. Carchman, J.A.D., Ronald E. Bookbinder, J.S.C., Craig L. Wellerson, J.S.C., Jude Del Preore, T.C.A. and the Administrative Office of the Courts, State of New Jersey; the Court dismissed them from the case on that same day. On July 20, 2005, Plaintiffs sent a letter to the Court indicating that they wished to voluntarily dismiss their claims against Harold G. Belkowitz; the Court dismissed him from the case on July 21, 2005. On July 26, 2005, Shari Seffer filed her motion to dismiss; she is seeking the filing bar against Plaintiffs, as well.[6]

---

[6]On August 29, 2005, Plaintiffs sent a letter to the Court indicating that they wished to voluntarily dismiss their claims against A. Jay Meyerson and Melissa Chuderewicz. However, Plaintiffs were unable to agree with Chuderewicz as to the terms of the dismissal, and Meyerson

## II.  DISCUSSION

### A. Defendants' Motions to Dismiss

### 1) <u>Motion to Dismiss Standard</u>

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all allegations in the Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom after construing them in the light most favorable to the non-movant. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir.1994). A pleading may be dismissed for "failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." <u>Hedenburg v. Bando American, Inc.</u>, 1992 WL 443432, at *4 (D.N.J. Mar.3, 1992) (citing <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)). Courts are required when conducting the 12(b)(6) inquiry to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. <u>In re Rockefeller Ctr. Prop., Inc. Sec. Litig.</u>, 311 F.3d 198, 215 (3d Cir.2002).  Nevertheless, legal conclusions offered in the guise of factual allegations are given no presumption of truthfulness. <u>Chugh v. Western Inventory Services, Inc.</u>,333 F.Supp.2d 285, 289 (D.N.J. 2004)(citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). Therefore, in ruling on a Rule 12(b)(6) motion, courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902,  907, n.8 (3d Cir.1997).

---

was never even served with the complaint.  Therefore, they both remain in the case.

On a motion to dismiss, the Court generally does not consider documents extraneous to

the pleadings, but the Court may consider a "document integral or explicitly relied upon in the

complaint ... without converting the motion to dismiss into one for summary judgment." In re

Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Here, because

Plaintiffs refers in their complaint to the numerous court proceedings that have taken place in

connection with these matters, this Court may consider the opinions and orders issued therein

without converting this Rule 12(b)(6) motion into a motion for summary judgment.  See id.

## 2) Plaintiffs' Claims

Plaintiffs' Complaint is an example of an "everything but the kitchen sink" pleading in

which they are suing almost everyone "under the sun."  The majority of the claims Plaintiffs are

asserting have already been brought before another court and dismissed.  In Tilbury v. Aames, et

al., Burlington County, Law Division, Case No. L-000667-02, Plaintiffs sued, among others,

Aames, FATICO, and Cenlar.   The suit alleged lending violations, fraud/misrepresentation,

negligence, conspiracy, breach of contract, deceptive trade practice, and other causes of action.

Tilbury v. Aames, et al., Burlington County, Law Division, Case No. L-000667-02, Am. Compl.

(June 17, 2002).  During discovery, Plaintiffs alleged that the underlying facts also supported

additional claims that all of the defendants participated in a laundry list of improper conduct,

including that various entities' conduct arising from the same transaction and occurrences at

issue in the present case amounted to a violation of the Racketeer Influenced and Corrupt

Organization Act ("RICO").  Tilbury v. Aames, et al., Burlington County, Law Division, Case

No. L-000667-02, Mot. To Enlarge and Amend Plaintiffs' Civil Action (July 21, 2004).  Despite

the allegation that the claim arose from the same facts and occurrences, the Court denied leave to

16

amend because it was, among other reasons, not timely filed. <u>Tilbury v. Aames, et al.</u>, Burlington County, Law Division, Case No. L-000667-02, Order (Aug. 27, 2004).

Oral argument was held on September 21, 2004, almost seven months prior to the filing of the instant lawsuit.  At oral argument, Judge Wellerson made the following determinations:

> -In regards to the application by Aames Home Loan against the plaintiffs [Ann] and David Tilbury, the Court is persuaded that summary judgment is appropriate. The Court is satisfied that no reasonable persons could differ in resolution of these claims.  There has been a complete lack of evidence presented by ... plaintiff[s] that would any reasonable person to the conclusion that in fact they were induced to enter into this contract which was known as the note and mortgage which was proffered by Aames Home Loan. <u>Tilbury v. Aames, et al.</u>, Burlington County, Law Division, Case No. L-000667-02, Hearing Transcript (Sept. 21, 2004) at 103:11-20.
>
> -The Court is satisfied that the claims brought by the plaintiffs have not been, they have not satisfied their burden of proof, that there is no preponderance of the evidence, and at this juncture, even giving all favorable inferences to the plaintiffs that they do not persuade the Court that any reasonable person could come to the conclusion that the defendants either conspired against them with the other co-defendants or committed a fraud or a breach of contract, that they violated the Consumer Protection Act and the other claims for relied which they have set forth in their moving papers.  The record should be clear that there is no evidence before the Court of any nature that they suffered any emotional harm as a result of this transaction.  <u>Id.</u> at 106:21-107:11
>
> -The Court is satisfied at this juncture that it is appropriate to issue summary judgment to Aames Home Loan on any and all claims brought forward by the plaintiffs, Ann and David Tilbury.  <u>Id.</u> at 107:23-108:1
>
> -The Court finds that there was no damage flowing to David and Ann Tilbury as a result of the action of [First] American Title Insurance Company. <u>Id.</u> at 108:25-109:2.
>
> -Cenlar Savings and Loan made no affirmative representations to the Tilburys as to the amount of the pay-off.  The Court finds that there is no fraud, no breach of contract, no conspiracy in regards to Cenlar and Cenlar's obligation has now been assumed by the title insurance company, that the issue of the amount of money owed between the Tilburys and the title insurance company has previously been litigated by both the Honorable Ronald Bookbinder, Judge of the Superior Court, Chancery Division, in Burlington County, and affirmed by the Appellate Division, Superior Court.  The Court's bound by that decision; the Court is satisfied that

there are no claims that are viable from the Tilburys against Cenlar Savings Bank.
<u>Id.</u> at 110:9-23.


New Jersey's entire controversy doctrine, codified in Rule 4:30A of the New Jersey Rules

of Civil Procedure, provides that "[n]on-joinder of claims required to be joined by the entire

controversy doctrine shall result in the preclusion of omitted claims to the extent required by the

entire controversy doctrine."  N.J.R. 4:30A.  It is the "commonality of facts," rather than legal

issues, parties or remedies, "that defines the scope of the controversy and implicates the joinder

requirements of the entire controversy doctrine."  <u>DiTrolio v. Antiles</u>, 142 N.J. 253, 272 (1995).

Thus, "the central consideration is whether the claims ... arise from related facts or the same

transaction or series of transactions."  <u>Fields v. Thompson Printing Co., Inc.</u>, 363 F.3d 259, 265

(3d Cir.2004) (quoting <u>DiTrolio</u>, 142 N.J. at 267).  The entire controversy doctrine applies to

"virtually all causes, claims, and defenses relating to a controversy between the parties engaged

in litigation."  <u>Id.</u> at 265 (citation omitted).  Federal courts in New Jersey have applied New

Jersey's entire controversy doctrine to bar claims that were actually litigated or could have been

litigated in previous state court actions.  <u>See</u> <u>Bernardsville Quarry v. Borough of Bernardsville</u>,

929 F.2d 927, 930 (3d Cir.1991); <u>Heir v. Del. River Port Auth.</u>, 218 F.Supp.2d 627, 632 (D.N.J.

2002); <u>Dowdell v. Univ. of Medicine and Dentistry of New Jersey</u>, 94 F.Supp.2d 527, 534

(D.N.J. 2000).

Morever, under the Full Faith and Credit Clause of the United States Constitution, "the

judicial proceedings of a state court shall have the same full faith and credit within every court in

the United States as they have by law or usage in the courts of the issuing state."  <u>Paramount</u>

18

Aviation Corp. v. Agusta, 178 F.3d 132, 141 (3d Cir.1999).  Thus, a federal court in New Jersey

must apply New Jersey's preclusion law, including its entire controversy doctrine, when

determining the preclusive effect of a previous judgment issued by a New Jersey state court.  See

Total Packaging Corp. v. Tenneco Packaging Corp., No. 01-4286, 2004 WL 758240, at *4

(D.N.J. Apr. 2, 2004); Sutton v. Sutton, 71 F.Supp.2d 383, 390 (D.N.J. 1999).  In addition to the

entire controversy doctrine, courts may also apply New Jersey's general principles of res judicata

when determining the preclusive effect of a New Jersey judgment.  See Sutton, 71 F.Supp.2d at

390-91.

     The principle of res judicata bars the re-litigation of claims that were decided in a

previous case involving the same parties and arising out of the same transaction.  Res judicata

"avoids 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and

fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'"

E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 492 (3d Cir.1990) (quoting Montana v. United

States, 440 U.S. 147, 153-154 (1979)).  In order for a subsequent action to be barred by res

judicata under New Jersey law, 1) the judgment in the prior action must be valid, final, and on

the merits, 2) the parties in the later action must be identical to or in privity with those in the

prior action, and 3) the claim in the later action must grow out of the same transaction or

occurrence as the claim in the earlier one.  See Sutton, 71 F.Supp.2d at 390 (citing Watkins v.

Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412 (1991)).  Similarly, under federal law, a

subsequent action will be barred by res judicata if there is "(1) a final judgment on the merits in a

prior suit involving (2) the same claim and (3) the same parties or their privies."  Id. at 389

(quoting U.S. Steel Corp., 921 F.2d at 493).

Here, the Court finds that Plaintiffs' claims against Aames, Cenlar, FATICO, and their employees and attorneys are barred by New Jersey's entire controversy doctrine.  All of the claims raised in the present action, necessarily arise from the same facts and transactions as the claims raised in the state court action.  The allegations in Plaintiffs' Complaint in this matter mirror those claims asserted in the state court proceeding before Judge Wellerson.

In addition to the identical claims asserted in the state and federal actions, Plaintiffs present no facts, other than those involving the judicial defendants and the proceeding before Judge Wellerson, to this Court that were not already addressed in the state court proceeding.  The only difference between Plaintiffs' claims in this Court and those in state court is the addition of the employees and attorneys as defendants.  However, these allegations arise out of the same facts and transactions as Plaintiffs' claims in the state court action and should therefore have been joined in the state court complaint.  In sum, all of Plaintiffs' claims against Aames, Cenlar, FATICO, and their employees and attorneys in the present matter were either already adjudicated in state court and dismissed with prejudice, or should have been included in their state court action.

Res judicata also precludes this Court from further review of Plaintiff's allegations in the instant action.  First, the judgment in state court was valid, final and on the merits.  New Jersey law dictates that a dismissal with prejudice "constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial."  Dowdell, 94 F.Supp.2d at 533.  Second, the present action involves Cenlar, Aames and FATICO, who were involved in the state court action.  Finally, the claims in this action not only arise out of the same occurrences as the claims

asserted in the state court action, but are also virtually identical to the claims set forth in

Plaintiffs' state court complaint.

Therefore, Plaintiffs' claims against 1) Aames and A. Jay Meyerson[7], Aames' CEO , 2)

FATICO and the FATICO defendants Gary L. Kermott, Nancy Newman-Brown, George M.

Conway, III, Stephen McNally, and 3) Cenlar and the Cenlar defendants Shari Seffer, Michael

Young, Kimberly Ann Glosso Hagen, Kelly Lutz, Nancy Irwin, Terry Kane, Kristin

Shellenberger and Rosemary Leonardis are dismissed.

Additionally, Plaintiffs never effected service of their complaint upon Defendants Bruce

Sattin and Andrew Finberg, their former attorneys.  Fed. R. Civ. P. 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120
> days after the filing of the complaint, the court, upon motion or on its own
> initiative after notice to the plaintiff, shall dismiss the action without prejudice as
> to that defendant or direct that service be effected within a specified time;
> provided that if the plaintiff shows good cause for the failure, the court shall
> extend the time for service for an appropriate period.  Grendysa has never served
> the complaint on; therefore, he has exceeded the 120 day service period set out in
> Fed. R. Civ. P. 4(m).

It is well settled that district courts have discretion to dismiss a complaint where a

plaintiff has failed to properly effect service on a defendant. Umbenhauer v. Woog, 969 F.2d 25,

30 (3d Cir.1992).  Here, Plaintiffs filed their complaint on April 18, 2005, which is more than six

months ago, yet, they never effected service of their complaint on Defendants Bruce Sattin and

Andrew Finberg. Therefore, pursuant to Rule 4(m), this Court will dismiss the claim against

---

[7]Plaintiffs have never effected service upon Meyerson.

them <u>sua</u> <u>sponte</u>. <u>See</u> <u>Mettle v. First Union Nat. Bank</u>, 279 F.Supp.2d 598, 604 (D.N.J. 2003) (citing <u>Fed. R. Civ. P.</u> 4(m)).

Finally, to the extent that Plaintiffs' claims arise from the proceedings before Judge Wellerson, the Court finds that those claims are also baseless.  Plaintiffs scurrilously allege that Judge Wellerson discriminated against them, violated their constitutional rights, and conspired against them.[8]  They even allege that the "Operator and/or controller of Court Recording device" participated in the alleged conspiracy against them because of alleged defects in the transcripts. Indeed, these claims, their claims against the judicial defendants and those against their own former attorneys as well as those adverse to them, reflect Plaintiffs' distrust for the judicial system and anyone involved therein.  Moreover, their entire complaint is without any legal basis or justification and borders on paranoia.   Plaintiffs' allegations against the various lawyers, employees of Cenlar, Aames and FATICO, and the courts, are based upon their misguided view that anyone who does not see things their way or is dealing in an adverse fashion to them must be acting in a conspirational and illegal manner.  For the reasons stated above, Plaintiffs' entire complaint is dismissed.

**B.  Defendants' Motions to Have Plaintiffs' Barred From Filing Without Leave of Court**

Next, the Court must address Defendants' motions to bar the Tilburys from filing future complaints in this district without first obtaining leave of Court.  I concluded my Opinion dismissing the Tilburys' appeal of the bankruptcy court by stating:  "In sum, it is time for finality in this long and tortured history of litigation involving Appellants' mortgage."  <u>Tilbury v.</u>

---

[8]Plaintiffs' voluntarily dismissed their claim against Judge Wellerson.

Balboa, Case No. 04-cv-4720 (FLW) at 11 (D.N.J Apr. 5, 2005).  This statement was obviously lost upon Plaintiffs, who filed the instant lawsuit and petition for emergent relief a mere thirteen days later.

I am aware that the Court should be flexible when dealing with pro se litigants, see In re McDonald, 489 U.S. 180, 184 (1972), and that the restraint Defendants are seeking is an extreme remedy.  However, such a restraint against the Tilburys is warranted and needed in the United States District Court for the District of New Jersey to prevent them from filing any more baseless, frivolous and abusive complaints.  See In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.").  This Court must ensure that its limited resources are allocated in such a manner as to protect and promote the interests of justice.  The Tilburys should no longer expect their repeated abuse of the judicial system to be tolerated.

Plaintiffs argue that their filings are distinguishable from that of Victoria Perry, a pro se Plaintiff against whom a filing bar was entered by this Court in Perry v. Gold & Laine, P.C ., 371 F. Supp.2d 622, 632 (D.N.J. 2005).  Plaintiffs explain that "Perry filed something like nine Civil Complaints against their neighbor, literally stalking the whole family over several years. Plaintiff's [sic] litigations cannot even be compared" to that of Ms. Perry.  Pls.' Opp. To Conway's Motion at 29.  However, while Plaintiffs argue that their conduct is easily distinguishable from that of Ms. Perry, it is not; in fact, it is quite similar.  Plaintiffs, just like Ms. Perry, have sued judges, adversarial attorneys, their own former attorneys and certain administrative personnel, and alleged that they all acted in a conspirational manner.

Furthermore, just as in <u>Perry</u>, Plaintiffs have filed claims with this Court that have already been litigated in other courts and dismissed.

Plaintiffs also contend that "[f]or the Court to barr [sic] Plaintiffs from any litigation in this matter would send a critical sign to all pro se litigants that all lawyers have to do is file enough Motions on any matter handled by a pro se litigant on the grounds they are filing abusive, groundless and vexatious Litigations." <u>Id.</u> at 29.  The Court disagrees, and notes that it is Plaintiffs' filings, and not Defendants' motions, that are the impetus for any bar imposed.   This Court  liberally construes complaints and briefs filed by <u>pro se</u> litigants; however,  it requires such filings to be non-frivolous.  The Supreme Court has not "suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel," <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993), much less excuse frivolous or vexatious filings by <u>pro se</u> litigants.  Groundless and vexatious litigation will justify an order enjoining a litigant from filing any <u>pro se</u> claims without first seeking prior leave of Court. <u>See Ketchum v. Cruz</u>, 961 F.2d 916, 921 (10th Cir. 1992).

This Court has the inherent power to protect itself from Plaintiffs' oppressive and frivolous litigation. <u>See Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991); <u>see also Institute for Motivational Living, Inc. v. Doulous</u>, No. 03-4177, 2004 WL 2241745, 110 Fed. Appx. 283 (3d Cir. 2004) (finding that "the District Court had inherent authority to impose [a] ... sanction" against a vexatious <u>pro se</u> litigant).  Moreover, the All Writs Act, which provides in pertinent part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of the law," 28 U.S.C. § 1651(a), lends further support to the Court's ability to issue a restriction against

24

Plaintiffs.   According to the Third Circuit, Section 1651(a) authorizes district courts to issue an injunction, thereby restricting the access to federal courts of parties who repeatedly file frivolous lawsuits. Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3d Cir.), cert. denied, 498 U.S. 806 (1990). Therefore, in the interest of promoting judicial efficiency and deterring further frivolous filings, this Court enjoins David and Ann Tilbury, when proceeding pro se,  from filing a complaint against any of the defendants herein or any employee, agent, or attorney thereof, in the United States District Court, District of Jersey, without prior leave of this Court. See Perry v. Gold & Laine, P.C ., 371 F. Supp.2d 622, 632 (D.N.J. 2005) (issuing a similar injunction against a pro se plaintiff); Smith v. Litton Loan Servicing, LP, Case No. 04-2846, 2005 WL 289927 (E.D. Pa. Feb. 4, 2005) (issuing a similar injunction against pro se plaintiffs).  Leave of court will be freely granted upon the Tilburys' showing through a properly filed petition that a specific proposed filing: (1) can survive a challenge under Federal Rule of Civil Procedure 12; (2) is not barred by principles of claim or issue preclusion; (3) is not repetitive or violative of a court order; and (4) is in compliance with Federal Rule of Civil Procedure 11.  See id.  The Order and Injunction to follow will not apply to the filing of timely notices of appeal from this Court to the Third Circuit Court of Appeals and papers solely in furtherance of such appeals.


**III.  CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss are granted, and the Court is exercising its inherent power to enjoin David and Ann Tilbury from further pro se filings against

these defendants or any employee, agent, or attorney thereof, unless certain conditions are met.

An appropriate Order follows.

Dated: December 12, 2005


                                                               S/ Freda L. Wolfson

                                                               Honorable Freda L. Wolfson

                                                               United States District Judge